**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Civil Action No.: 0:19-cv-62437-KMM

| | |
|---|---|
| AROUND THE CLOCK A/C SERVICE, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ANTHONY PERERA, DOUGLAS PERERA, SR., | ) |
| and AIR PROS, LLC, | ) |
| | ) |
| Defendants. | ) |
| ——————————————————— | ) |

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST
DEFENDANT AIR PROS, LLC AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff Around the Clock A/C Service, LLC ("Plaintiff"), by and through undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby moves this Honorable Court to enter Summary Judgment in its favor against Defendant Air Pros, LLC, as to the claims for relief set forth in Plaintiff's Second Amended Complaint.  As will be made clear below, there are no genuine issues of material fact as to the bases for the Plaintiff's Motion, and the Plaintiff is entitled to judgment as a matter of law on the issue of liability and the entry of a permanent injunction.

## I.     INTRODUCTION

This Motion requests summary judgment against Defendant Air Pros, LLC ("Air Pros") as to liability on the four causes of action asserted in Plaintiff's Second Amended Complaint, namely Counts I (Federal Trademark Infringement), II (Federal Unfair Competition and False Designation of Origin), III (Florida Deceptive and Unfair Trade Practices), and IV (Florida Trademark Infringement). [DE] 57.  These causes of action all arise from Air Pros' unauthorized use of Plaintiff's well known trademark, AIR AROUND THE CLOCK, or colorable imitations thereof, both on its website and in a search engine keyword advertising scheme that operated to trick consumers that were looking to utilize Plaintiff's services into unwittingly contacting Air Pros and utilizing Air Pros' services.  In the short term, Air Pros deceptive schemes could be

considered a success as they effectively created confusion amongst the consuming public and enabled Air Pros to leverage Plaintiff's name recognition and goodwill to immediately grow its own sales.  But under the Federal Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* ("Lanham Act") and the Florida Statutes, this type of deceptive conduct is clearly unlawful and should be enjoined.

Summary judgment as to liability issues on each count in the Second Amended Complaint is appropriate because there is no reasonable dispute over Plaintiff's ownership of its AIR AROUND THE CLOCK mark, no reasonable dispute over the manner in which Air Pros' used Plaintiff's mark on its website and in its search engine keyword advertising scheme, and no reasonable dispute that Air Pros conduct not only created a likelihood of confusion but caused actual confusion in the marketplace.  And for the reasons laid out below, the entry of a permanent injunction along with an entry of judgment on the issue of liability is also appropriate. While Plaintiff is entitled to an award of monetary damages based on Air Pros' revenues and profits under both its Lanham Act and Florida law claims, such damages will be sought during trial, or in a separate hearing.  Furthermore, while Plaintiff's claims remain pending against Defendants Anthony Perera and Douglas Perera, Sr., Plaintiff submits that the issue of their liability raises issues of fact that must be adjudicated at trial.

In accordance with the Local Rules, Plaintiff Around the Clock A/C Service, LLC's Statement of Material Facts ("Plaintiff's Statement of Facts"),  is filed concurrently herewith and incorporated by reference.

## II.    SIGNIFICANT UNDISPUTED MATERIAL FACTS

Plaintiff's Rights

There is no dispute that Plaintiff owns both a federal trademark registration and a Florida trademark registration the trademark AIR AROUND THE CLOCK and has used this mark in interstate commerce to provide services in South Florida to customers from all over the country since at least as early as 1988 and in connection with its website since at least as early as 1999. *See*, Plaintiff's Statement of Facts at ¶¶1-7.  Plaintiff's federal trademark registration, registration number 3,923,076 is incontestable. *See*, Plaintiff's Statement of Facts at ¶8.   And there are no third parties claiming either any trademark rights either with the U.S. Patent and Trademark

Office or the Florida Department of State in the phrase "Air Around the Clock." *See*, Plaintiff's Statement of Facts at ¶¶9-10.

Defendant's Infringing Conduct

Like Plaintiff, Air Pros is in the business of providing air conditioning related services. *See*, Plaintiff's Statement of Facts at ¶13.  Without authorization, Air Pros has used an exact reproduction of Plaintiff's AIR AROUND THE CLOCK mark on its website and as a triggering "keyword" in pay per click search engine advertising campaigns. *See*, Plaintiff's Statement of Facts at ¶¶14-15.  In the ads Air Pros has displayed in response to search engine searches for Plaintiff's AIR AROUND THE CLOCK trademark, Air Pros obscures any identification of itself as the sponsor of the ad. *See*, Plaintiff's Statement of Facts at ¶¶15-16.  And Air Pros has documented many instances of consumers who contacted Air Pros, LLC in response to Air Pros, LLC's pay per click search engine advertising campaigns which were directed at Plaintiff believing that Air Pros, LLC was Plaintiff. *See*, Plaintiff's Statement of Facts at ¶18.

### III.   MEMORANDUM OF LAW

Plaintiff submits this Memorandum of Law in support of its Motion for Partial Summary Judgment.

**A.   Legal Standard on Summary Judgment**

It is well settled that under Fed. R. Civ. P. 56, summary judgment is proper where it is shown that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994).  Only the existence of a genuine issue of material fact, as opposed to a simple factual dispute, will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247-48 (1986).  If the record as a whole could not lead a rational fact-finder to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The moving party bears the burden of pointing to that part of the record which shows the absence of a genuine issue of material fact. *Hairston v. Gainsville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993).  If the movant meets its burden, the burden then shifts to the non-moving part to establish that a genuine dispute of material facts exists. *Id*.  In response, the non-moving party must provide more than a mere "scintilla" of evidence supporting its position.  *Anderson* at 248-50

(1986).  No genuine issue of material fact exists when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex* at 322.  To meet this burden, the non-moving party must go beyond the pleadings and "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Chanel, Inc. v. Italian Activewear of Florida, Inc*., 931 F.2d 1472, 1477 (11th Cir. 1991).  Evidence sufficient to show that material facts are in issue must be introduced by the party opposing summary judgment. *Byrnes v. Honda Motor Co*., 907 F.Supp. 1525, 1527 (S.D. Fla. 1995).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson* at 252.

**B.     Plaintiff Entitled to a Judgment as a Matter Of Law on the Issue of Liability for Trademark Infringement under 15 U.S.C. §1114**

> 1.     Legal Standard for Lanham Act Trademark Infringement

Under §32 of the Lanham Act, namely 15 U.S.C. §1114, "a defendant is liable for infringement if, without consent, he uses 'in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark' which is 'likely to cause confusion, or to cause mistake, or to deceive.'" *FCOA, LLC v. Foremost Title & Escrow Servs., LLC*, 416 F. Supp. 3d 1381, 1387–88 (S.D. Fla. 2019)(quoting 15 U.S.C. § 1114(1)(a)).  "A plaintiff bringing an infringement action must prove 'first, that its mark is valid and, second, that the defendant's use of the contested mark is likely to cause confusion.'" *Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of the Knights Hospitallers of the Sovereign Order of Saint John of Jerusalem, Knights of Malta, The Ecumenical Order*, 809 F.3d 1171, 1181 (11th Cir. 2015)(*quoting Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322, 326 (11th Cir. 1989).  "In determining the likelihood of confusion between the two marks, we require a district court to analyze the following seven factors: (1) type of mark, (2) similarity of mark, (3) similarity of the products the marks represent, (4) similarity of the parties' retail outlets and customers, (5) similarity of advertising media used, (6) defendant's intent and (7) actual confusion." *Lone Star Steakhouse v. Longhorn Steaks*, 122 F. 3d 1379, 1382 (11th Cir. 1997). "Of these factors, the type of mark and the evidence of actual confusion are the most important in this circuit." *Dieter,* 880 F.2d at 326 (*citing Freedom Sav. and Loan Ass'n v. Way*, 757 F.2d 1176, 1186 (11th Cir.1985)).  "Although likelihood of confusion is a question of fact, it may be

decided as a matter of law." *FCOA*, 416 F. Supp. 3d at 1388 (*citing Tana v. Dantanna's*, 611 F.3d 767, 781 n.7 (11th Cir. 2010)).

        2.   <u>Plaintiff's Mark is Valid as a Matter of Law</u>

As noted above, Plaintiff's federal trademark registration for AIR AROUND THE CLOCK, No. 3,923,076, has obtained incontestable status.  Because of this, <u>the validity of Plaintiff's mark is conclusively presumed</u>. *Dieter,* 880 F.2d at 326 ("Because [registrant's] mark is 'incontestable' its validity is conclusively presumed… and accordingly the only factual issue for the trial court's determination was whether [accused's] use of the [asserted] mark was likely to cause confusion."); *Sovereign Military*, 809 F.3d at 1183 ("[w]ith respect to the first element of infringement — validity — incontestability provides conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce.")(internal quotation omitted); 15 U.S.C. §1115(b).  As such, under well established 11th Circuit precedent, Plaintiff's incontestable trademark registration establishes the first element of trademark infringement as a matter of law, leaving only the likelihood of confusion element to be analyzed.

Now in some cases in the 11th Circuit, establishing priority is cited as an element of a trademark infringement claim. *See, e.g., Frehling Enterprises v. Int'l Select Group*, 192 F. 3d 1330, 1335 (11th Cir. 1999)("to prevail, a plaintiff must demonstrate (1) that its mark has priority and (2) that the defendant's mark is likely to cause consumer confusion.").  Still, even from that view, there is no reasonable dispute as to priority in this case either as Plaintiff's federal trademark registration No. 3,923,076, which is on the USPTO's Principal Register, has a filing date of July 10, 2010, giving Plaintiff nationwide priority in its mark as of that date as a matter of law. *See, Stephan Distrib., Inc. v. Sally Beauty Co., Inc*., No. 04-21316-CIV-JORDAN, 2005 WL 8157063, at *3 (S.D. Fla. Sept. 14, 2005)("Federal registration of a trademark, however, is… proof of the continual use of the mark dating back to the filing date of the applications for registration.)(citing *Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc*., 161 F.Supp.2d 1339, 1349 (S.D. Fla. 2001) *and citing J.C. Hall Co. v. Hallmark Cards, Inc.,* 340 F.2d 960, 962 (C.C.P.A. 1965)).  As Air Pros did not even exist until 2017, there is simply no way Air Pros could prove any set of facts that it began using the mark prior to Plaintiff's priority date. *See*, Plaintiff's Statement of Facts at ¶12.  Thus, there could be no issue of fact as to the issue of priority.

3.      Application of the Likelihood of Confusion Factors Supports a Finding of a Likelihood of Confusion as a Matter of Law

With the first element of Lanham Act trademark infringement clearly established, the question of Air Pros liability turns on whether its use of Plaintiff's mark created a likelihood of confusion. In this case, it is undisputed that Air Pros used Plaintiff's AIR AROUND THE CLOCK mark, or a colorable imitation thereof, in at least two ways: (1) on webpages on its website and (2) as a triggering "keyword" in pay per click search engine advertising campaigns (combined with an actual ad that did not identity Air Pros as the sponsor). *See*, Plaintiff's Statement of Facts at ¶¶14-15. While these uses were intended to work together to create a sophisticated deception scheme, when the way Air Pros deployed them is considered in light of the applicable legal standards, including the likelihood of confusion test, there is no issue of fact that they each create a likelihood of confusion on their own.

Under the 11th Circuit's seven factor likelihood of confusion analysis, "there are no set rules as to how much evidence of confusion is needed; rather, a district court must take into consideration the circumstances surrounding each particular case." *Lone Star Steakhouse*, 122 F.3d at 1382 (*internal citations omitted*). As will be shown here, not only does each of these factors weigh heavily in favor of likelihood of consumer confusion, there is in fact evidence of actual confusion.

Type of Mark

The "type of mark" factor requires inquiry into the strength of the mark. It is well established in trademark jurisprudence that "classifying the type of mark Plaintiff has determines whether it is strong or weak." *Frehling,* 192 F.3d at 1335. As this Court has recognized, this is the "second most important factor in the seven-factor balancing test for confusion." *FCOA*, 416 F. Supp. 3d at 1388 (*quoting Sovereign Military*, 809 F.3d at 1182). This is because "[t]he stronger the mark, the greater the scope of protection accorded it, the weaker the mark, the less trademark protection it receives." *FCOA*, 416 F. Supp. 3d at 1388 (*quoting Frehling*, 192 F.3d at 1335).

In evaluating the strength of a mark, a factfinder must "first classif[y] the mark into one of four categories of distinctiveness." *FCOA*, 416 F. Supp. 3d at 1388. Then, "the Court must 'consider the degree to which third parties make use of the mark.'" *Id*. (*quoting Sovereign Military*, 809 F.3d at 1182). "'The less that third parties use the mark, the stronger it is, and the

- 6 -

more protection it deserves.'" *FCOA*, 416 F. Supp. 3d at 1388 (*quoting Sovereign Military*, 809 F.3d at 1182).

The four categories of distinctiveness for marks, in order of increasing strength, ase: 1) generic, 2) descriptive, 3) suggestive, and 4) arbitrary. *Frehling,* 192 F.3d at 1335. The categories are classified "based on the relationship between the name and the service or good it describes." *Tancogne v. Tomjai Enterprises Corp*., 408 F. Supp. 2d 1237, 1244 (S.D. Fla. 2005). Suggestive, arbitrary, and descriptive marks that have acquired a secondary meaning[1] are afforded protection under the Lanham Act.

With respect to the AIR AROUND THE CLOCK mark, there can be no reasonable dispute that it is a relatively strong mark. As observed by this Court in its FCOA decision, "an incontestable mark is presumed to be at least descriptive with secondary meaning, and therefore a relatively strong mark." *FCOA*, 416 F. Supp. 3d at 1389 (*quoting Sovereign Military*, 809 F.3d at 1183).

In addition, the fact that the Plaintiff's mark is registered on the Principal Register of the USPTO also leads to a presumption that the mark is inherently distinctive. *Edge Sys. LLC v. Aguila*, 186 F. Supp. 3d 1330, 1346 (S.D. Fla. 2016), aff'd, 708 F. App'x 998 (Fed. Cir. 2017)("Registration of a trademark on the principal register of the USPTO is prima facie evidence of validity and establishes a presumption that the mark is protectable or distinct."). This is because the combination of the term AIR and the phrase AROUND THE CLOCK qualifies as suggestive with respect to an air conditioning services provider because it "suggests, rather than describes, a characteristic of the goods or services and 'requires an effort of the imagination by the consumer in order to be understood as descriptive.'" *Tancogne* at 1244 (*quoting Am. Television & Commc'ns Corp. v. Am. Commc'ns & Television, Inc.*, 810 F.2d 1546, 1549 (11th Cir. 1987)). Even assuming, *arguendo*, that "Around the Clock" is descriptive, the AIR AROUND THE CLOCK mark is not merely descriptive because the <u>combined term</u> alone does not "identif[y] qualities or characteristics of the goods or services with which they are connected, such as color, odor, function, dimensions, or ingredients." Indeed, it has long been

---

[1] *See, Tancogne v. Tomjai Enterprises Corp.*, 408 F. Supp. 2d 1237, 1244 (S.D. Fla. 2005)("[t]o establish a secondary meaning in this circuit, a plaintiff must show that the primary significance of the term in the minds of the consuming public is not the product, but the producer.")(internal quotations omitted).

observed that "[t]he combination of two or more descriptive words as a composite mark may result in a suggestive term." *Tancogne* at 1244-45 (*citing* 2 McCarthy on Trademarks and Unfair Competition § 11.26 (4th ed.); *Vision Ctr. v. Opticks, Inc.*, 596 F.2d 111, 115 (5th Cir. 1979)("[c]ommon ordinary words can be combined in a novel or unique way and thereby achieve a degree of protection denied to the words when used separately.")).

When the degree in which third parties (do not) use Plaintiff's mark is considered, it cannot be disputed that Plaintiff's mark should be afforded a high level of protection.  At present, the USPTO only has 2 live records that include the phrase "Air Around the Clock," and both of these are owned by Plaintiff. *See*, Plaintiff's Statement of Facts at ¶9.  Furthermore, there are only two records in Florida's Department of State trademark database that includes the phrase "Air Around the Clock;" and both are owned by Plaintiff. *See*, Plaintiff's Statement of Facts at ¶10.  This striking lack of third party use operates to further enhance the strength of Plaintiff's mark.  As repeatedly noted by the 11th Circuit, "[t]he less that third parties use the mark, the stronger it is, and the more protection it deserves." *Frehling,* 192 F.3d at 1336 (*citing John H. Harland Co. v. Clarke Checks, Inc*., 711 F.2d 966, 975 (11th Cir.1983).

Accordingly, there simply is no issue of fact that Plaintiff's AIR AROUND THE CLOCK mark is a strong mark that deserves a substantial degree of protection.  Thus, the type of mark factor strongly favors Plaintiff.

<u>Similarity of Marks</u>

"Here, the court compares the marks and considers the overall impressions that the marks create, including the sound, appearance, and manner in which they are used." *Frehling,* 192 F.3d at 1337.  As to Plaintiff's standard character mark, this comparison involves the string of characters of the composite term AIR AROUND THE CLOCK.  In this instance, the mark being used by Air Pros in the instances being cited in this Motion "Air Around the Clock," which is identical to the text of Applicant's AIR AROUND THE CLOCK mark (i.e. Air Around the Clock). *See*, Plaintiff's Statement of Facts at ¶¶14-15.  Therefore, this factor overwhelmingly favors Plaintiff.

<u>Similarity of the Products or Services the Marks Represent</u>

Here, the court must make a determination as to whether the services are the type that members of the public would attribute to a single source. *See e.g. Freedom Sav. & Loan Asso. v. Way*, 757 F.2d 1176, 1184 (11th Cir. 1985); *See also Frehling,* 192 F.3d at 1338.  In this case,

there is no dispute that Plaintiff is a provider of air conditioning related services, and has long used its AIR AROUND THE CLOCK mark in connection with its provision of air conditioning related services. *See*, Plaintiff's Statement of Facts at ¶¶1-2.  Similarly, there is no dispute that Air Pros is also a provider of air conditioning related services. *See*, Plaintiff's Statement of Facts at ¶13.  Thus, it is fairly obvious that the substantially synonymous air conditioning related services provided by Plaintiff and Defendants are the kind of services that the public would attribute to a single source.  As such, this factor also weighs overwhelmingly in Plaintiff's favor.

Similarity of the Parties' Retail Outlets and Customers

"This factor takes into consideration where, how, and to whom the parties' products are sold." *Frehling*, 192 F.3d at 1339.  In this regard, there does not need to be direct competition between the parties.  *Id.*  Rather, there need only be some degree of overlap present.  *Id.*  Here, there is in fact direct competition for purchasers of air conditioning related services such as installation and repair of air conditioning units. *See*, Plaintiff's Statement of Facts at ¶¶1-2, 13.  Accordingly, this factor weighs heavily in favor of a likelihood of consumer confusion.

Similarity of Advertising Media Used

"This factor looks to each party's method of advertising."  *Frehling*, 192 F.3d at 1339. "The greater the similarity, the greater the likelihood of confusion." *Sovereign Military*, 809 F.3d at 1188.  The advertising methods do not have to be identical; "'the standard is whether there is likely to be significant enough overlap in the audience of the advertisements that a possibility of confusion could result.'" *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc*., 830 F.3d 1242, 1262 (11th Cir. 2016)(*quoting Frehling*, 192 F.3d at 1340.

In the instant matter, there is a substantial overlap in the advertising media used by Plaintiff and Air Pros.  In general, there is no dispute that both Plaintiff and Air Pros utilize multiple types of mass media advertising, such as radio, billboards and Internet advertising. More pertinent to this is that websites and keyword triggered pay per click search engine advertising, which were the media on which Air Pros used Plaintiff's mark, are both used by Plaintiff and Air Pros. *See*, Plaintiff's Statement of Facts at ¶¶2, 4, 11, 14-15.  As these types of marketing would clearly have a substantial overlap in audience, this factor also weighs heavily in Plaintiff's favor.

Defendants' Intent

"If it can be shown that a Defendant adopted a Plaintiff's mark with the intention of deriving a benefit from the Plaintiff's business reputation, this fact alone may be enough to justify the interference that there is confusingly similarity." *Frehling*, 192 F.3d at 1340.  Here, there can be no other explanation for Defendants including the phrase "Air Around the Clock" on its website than to try to derive a benefit from the Plaintiff's business reputation. *See*, Plaintiff's Statement of Facts at ¶17.   Back in February of 2019, Air Pros acknowledge "Air Around the Clock" (Plaintiff's trademark, not its business name "Around the Clock A/C Service, LLC") as a competitor. *Id*.  The only reason for Air Pros to promote an "$59 Air Around the Clock AC repair deal," would be to create an appearance Air Around the Clock was merely a product line/promotion of Air Pros, not a separate company and competitor.

Similarly, the appearance and text of the actual search engine pay per click ads that Air Pros would have presented when triggered by a search for Plaintiff's AIR AROUND THE CLOCK mark reveal Air Pros' fraudulent intent.  Conspicuously absent from these ads is any clear indication of who the sponsor of the ad is. *See*, Plaintiff's Statement of Facts at ¶¶15-16. When a business is trying to promote itself, the most important thing in an advertisement would typically be to identify themselves as the sponsor of the ad.  But for Air Pros, their intention was not to promote their company but rather to trick consumers who searched for Plaintiff into contacting them.  A key part of this strategy is <u>not</u> revealing Air Pros as the sponsor of the ad; counting on the consumer to assume the ad related to Plaintiff because it appeared when they searched for Plaintiff and it did not give any information that would refute the consumer's assumption.

Furthermore, there is not dispute that Air Pros routinely fielded calls that came from its "competitor ad" campaign wherein consumers would indicate they believed Air Pros was Plaintiff (i.e., "Air Around the Clock"). *See*, Plaintiff's Statement of Facts at ¶18.  The fact that Air Pros continued to engage in its search engine scheme for months following the initiation of this action, and despite the extensive confusion that it was documenting, leaves no doubt that its goal all along was to create and capitalize on confusion.  As such, the intent factor clearly weighs in favor of a likelihood of confusion finding.

Evidence of Actual Confusion

Evidence of actual confusion is not necessary for a finding of likelihood of consumer confusion in order to obtain a preliminary injunction. *E. Remy Martin & Co., S.A. v. Shaw Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1529-1530 (11th Cir. 1985). Such evidence is, however, typically the best evidence of a likelihood of confusion. *Exxon Corp. v. Texas Motor Exchange, Inc.,* 628 F.2d 500, 506 (5th Cir. 1980). Moreover, evidence of actual confusion typically makes finding a likelihood of confusion a foregone conclusion. *See Unique Sports Prods. v. Wilson Sporting Goods Co.*, 512 F. Supp. 2d 1318, 1325 (N.D. Ga. 2007)("This is a logical proposition: if there is evidence of actual confusion, a likelihood of confusion is usually a foregone conclusion").

"The quantum of evidence needed to show actual confusion is relatively small." *FCOA*, 416 F. Supp. 3d at 1394 (*quoting Florida Int'l Univ. Bd. of Trustees*, 830 F.3d at 1264 (11th Cir. 2016); *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 937 (11th Cir. 2010)). "With regard to actual confusion, we have specifically accorded substantial weight to evidence that actual customers were confused by the use of a mark as opposed to other categories of people." *FCOA*, 416 F. Supp. 3d at 1394.

Here, there is evidence of actual confusion by actual customers. Indeed, it was Plaintiff's receipt of an unsolicited communication from a customer expressing confusion over Plaintiff's association with Air Pros that spurred Plaintiff to file this action. [DE] 1-4. Plaintiff has since received more reports of confusion from customers. And as noted above, Air Pros' records of its customer interactions are littered with notes about customers who think Air Pros is Air Around the Clock. *See*, Plaintiff's Statement of Facts at ¶18. Thus, this evidence results in this factor weighing heavily in favor of Plaintiff and essentially renders a finding of a likelihood of confusion a foregone conclusion.

Viewed in total, there is simply no genuine dispute of material fact as to the issues of the ownership of the trademark and Air Pros' use in commerce of trademark in a manner which creates a likelihood of confusion in the market. Accordingly, Plaintiff is entitled to summary judgment on the issue of liability for its trademark infringement claim under Section 32 of the Lanham Act, leaving only the issue of damages, and the extent to which Defendant Anthony Perera ratified the infringing activity, for trial on this claim.

4.    Air Pros' Use of the Plaintiff's Mark on a Webpage and Use of the Plaintiff's Mark in Keyword Advertising Scheme Are Both Infringements

There is no dispute that Air Pros has used Plaintiff's AIR AROUND THE CLOCK mark in the body of a web page of its website. *See*, Plaintiff's Statement of Facts at ¶14.  It is well established that "the use of another's trademark in the body of a web page can cause confusion and therefore, infringement of that trademark." 5 McCarthy on Trademarks and Unfair Competition § 25A:1 (5th ed.)(*citing Playboy Enterprises, Inc. v. Universal Tel-A-Talk, Inc.*, 1998 WL 767440 (E.D. Pa. 1998), reconsideration denied, 1999 WL 285883 (E.D. Pa. 1999)). As such, there is no dispute that this act, when viewed in light of the above application of the seven factor test, is sufficient to establish Air Pros liability for infringing Plaintiff's trademark.

There is also no dispute that Air Pros has used Plaintiff's AIR AROUND THE CLOCK mark as a keyword in a search engine advertising scheme. *See*, Plaintiff's Statement of Facts at ¶¶15-16.  This scheme worked by Air Pros having an advertisement appear that obscured the fact that Air Pros was the sponsor of the ad.  In their ads, Air Pros would leave out its own name, placing instead its domain name (notably not its airprosusa.com domain name, but a floridaairpros.com domain name which conveniently begins with the word Florida, further obscuring its name) where the business name is supposed to go. *See*, Plaintiff's Statement of Facts at ¶15.  And Air Pros would also omit any mention of its name in the body text of the ad. *See*, Plaintiff's Statement of Facts at ¶¶15-16.  This type of ad is clearly not intended to promote Air Pros as an air conditioning company - on a glance, one would not even know who the sponsor of the ad it was.

The effect of this type of presentation of an ad is that anyone who was not specifically looking for Air Pros would overlook the obscure reference to Air Pros in the listed domain name. So when you recall that this ad appears in response to a consumer searching for "Air Around the Clock," the deception being attempted crystallizes.  The whole point is to make it so that ad, when it is presented to a consumer searching for Air Around the Clock, does not tip off the consumer that would not be calling Air Around the Clock if they initiate a call from the ad.

And the ruse does not end once a tricked consumer calls Air Pros.  When receiving calls, receptionist at Air Pros do not greet a consumer by advising them the consumer that are speaking with Air Pros. *See*, Plaintiff's Statement of Facts at ¶¶19.  So if a consumer who clicked one of Air Pros ads that came up in response to a search for Air Around the Clock does not specifically

ask whether they are speaking to Air Around the Clock, they will still not receive any information about who they are actually speaking to. And in some cases, when a customer does ask whether they are speaking to Air Around the Clock, representatives from Air Pros will respond that they are. *See*, Plaintiff's Statement of Facts at ¶20.

From a legal standpoint, the issue of whether the use of another's trademark as a keyword in search engine advertising in the 11th Circuit depends moreso on what information is presented, or omitted, from the advertisement that is presented in response to the keyword. The 11th Circuit began to lay out the framework for this issue in its *N. Am. Med. Corp. v. Axiom Worldwide, Inc.* decision. 522 F.3d 1211 (11th Cir. 2008). As this Court noted when applying the rationale from Axiom to a case involving search engine keyword advertising, "[t]he *Axiom Worldwide* court cited favorably an opinion in which keywords triggering a competitor's ad was grounds for an injunction, but the Eleventh Circuit was careful to note that likelihood of confusion was especially high in that case because the ads did not identify the sponsor of the ad." *Tartell v. S. Fla. Sinus & Allergy Ctr., Inc.*, No. 12-61853-CIV, 2013 WL 12036430, at *6 (S.D. Fla. Jan. 28, 2013)(*citing Axiom Worldwide*, 522 F.3d at 1223. In *Axiom Worldwide*, the 11th Circuit held that "[b]ecause [the defendant's] use of [the plaintiff's] trademarks as meta tags caused the Google search to suggest that [the defendant's] products and [the plaintiff's] products had the same source, or that [the defendant] sold both lines, or that there was some other relationship between [the defendant] and [the plaintiff], [the defendant's] use of the meta tags caused a likelihood of actual source confusion." *Axiom Worldwide*, 522 F.3d at 1223. In *Tartell*, this Court noted a key distinction in the conduct of the accused, stating that the defendant's "ad clearly identified himself as the provider, so this case is unlike the situation noted in *Axiom Worldwide*. There is little likelihood of confusion as to who was providing the advertised services." No. 12-61853-CIV at *6.

In this instance, Air Pros' ad clearly does NOT identify itself as the service provider as was the case in *Tartell*. Air Pros' conduct in this case is in fact analogous to the conduct found to be confusing in the opinion cited favorably by the *Axiom Worldwide* court. As explained by the *Axiom Worldwide* court, "[b]ecause the banner ads appeared immediately after the searcher typed in the [plaintiff's] trademarks, and invited the user to 'click here,' and especially because the banner ads did not clearly identify a source (i.e., the sponsor of the ad), the user was likely to be confused regarding the sponsorship of the unlabeled advertisements." *Axiom Worldwide*, 522

F.3d at 1223 (*citing Playboy Enterprises, Inc. v. Netscape Communications Corp*., 354 F.3d 1020 (9th Cir.2004)).  This reasoning articulates very well the likelihood of confusion that is created by Air Pros, and the confusion that has been observed independently by both Plaintiff and Air Pros, by the above described keyword advertising scheme (without even getting to the phone answering deception part).  And when this conduct is viewed in light of the above application of the seven factor test, it is clearly sufficient to establish Air Pros liability for infringing Plaintiff's trademark as a matter of law.

**C.      Plaintiff Entitled to a Judgment as a Matter Of Law on the Issue of Liability for False Designation of Origin under 15 U.S.C. §1125**

As held numerous times by the 11th Circuit, and noted by this Court, "[t]he same set of facts that permit a plaintiff to recover under § 1114(1)(a) will also result in recovery for false designation of origin and unfair competition under § 1125." *Edge Sys. LLC v. Aguila*, 186 F. Supp. 3d 1330, 1348 (S.D. Fla. 2016), aff'd, 708 F. App'x 998 (Fed. Cir. 2017) (*citing Babbit Elecs., Inc. v. Dynascan Corp*., 38 F.3d 1161, 1181 (11th Cir.1994)).  This is because for false designation of origin, just like trademark infringement "the determining factor… is 'whether the public is likely to be deceived or confused by the similarity of the marks at issue.'" *Edge Sys*, 186 F.Supp.3d at 1348 (*quoting Under Armour, Inc. v. 51nfljersey.com*, No. 13–62809–CIV, 2014 WL 1652044, at *5 (S.D.Fla. Apr. 23, 2014); *Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763, 780, 112 S. Ct. 2753, 2763, 120 L. Ed. 2d 615 (1992)).  Accordingly, under the rationale laid out in sub-section B of this Motion, *supra*, Plaintiff is entitled to summary judgment on the issue of liability for false designation of origin claim under Section 43 of the Lanham Act.

**D.      Plaintiff Entitled to a Judgment as a Matter Of Law on the Issue of Liability for it State Law Claims**

The analysis Plaintiff's federal trademark infringement claim also applies to Plaintiff's Florida state statutory trademark infringement claim and Plaintiff's Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). *Edge Sys.,* 186 F. Supp. 3d at 1359 ("The legal standards for Florida statutory and common law claims of trademark infringement and unfair competition '"are the same as those for federal claims of trademark infringement and unfair competition.'")(*quoting Rain Bird Corp. v. Taylor*, 665 F.Supp.2d 1258, 1267 (N.D.Fla.2009); *Gift of Learning Found., Inc. v. TGC, Inc*., 329 F.3d 792, 802 (11th Cir.2003)).  As this Court in *Edge Sys.* continued, "it is widely accepted that 'a successful Lanham Act infringement claim

supports a claim for violation of FDUTPA.'" *Edge Sys.,* 186 F. Supp. 3d at 1359 (*quoting Coach, Inc. v. Swap Shop, Inc*., 916 F.Supp.2d 1271, 1283 (S.D.Fla.2012*)); see also TracFone Wireless, Inc. v. GSM Grp., Inc*., 555 F.Supp.2d 1331, 1338 (S.D.Fla.2008)("Engaging in trademark infringement is an unfair and deceptive trade practice that constitutes a violation of the [Florida Deceptive and Unfair Trade Practices] Act.").   As such, under the rationale laid out in sub-section B of this Motion, *supra*, Plaintiff is entitled to summary judgment on the issue of liability for its Florida trademark infringement claim and its FDUTPA claim.

**E.      Air Pros Cannot Establish Any Affirmative Defense as to Liability**

In its Answer and Affirmative Defenses filed on August 17, 2020, Air Pros purports to assert a total of 12 affirmative defenses. [DE] 72.  Its first three affirmative defenses, namely failure to state a claim, lack of subject matter jurisdiction, lack of standing, can be rejected out of hand in a federal lawsuit brought by an owner of a federal trademark registration under the Lanham Act for unauthorized use of the registered mark.

As to the fourth, fifth, and sixth affirmative defenses, namely, failure to join an indispensible party, unclean hands, and failure to comply with the requirements Lanham Act, Plaintiff notes that Air Pros has provided no evidence, and will not be able to provide any evidence, that would create an issue of fact on these claims.

As to the seventh, eight and tenth affirmative defenses, Plaintiff notes that as these deal with damages, they are not relevant to the instant motion.

As to the ninth affirmative defense, which alleges fraud on the trademark office, Air Pros again has provided no evidence, and will not be able to provide any evidence, that would create an issue of fact on this defense, especially considering the fact that "[a] party seeking cancellation of a trademark registration for fraudulent procurement bears a heavy burden of proof…[because] the very nature of the charge of fraud requires that it be proven to the hilt with clear and convincing evidence. *In re Bose Corp*., 580 F.3d 1240, 1243 (Fed. Cir. 2009)(internal quotations omitted).

As to the eleventh affirmative defense, relating to descriptive, or classic, fair use, Air Pros has provided no evidence, and will not be able to provide any evidence, suggesting that its use of "$59 Air Around the Clock AC repair deal" or "Air Around the Clock as a search engine keyword, was a descriptive use and in good faith. *Int'l Stamp Art, Inc. v. U.S. Postal Serv*., 456 F.3d 1270, 1274 (11th Cir.2006).  As discussed above, using "Air" together with "Around the

Clock" is not descriptive of anything.  Thus it could not be being used to accurately describe Air Pros' services.  *Int'l Stamp Art*, 456 F.3d at 1274 ("The 'fair-use' defense, in essence, forbids a trademark registrant to appropriate a descriptive term for its exclusive use and so prevent others from accurately describing a characteristic of their goods.").  Even if later versions of Air Pros' website adopted different language that is arguable descriptive, these web pages are not being put at issue in this motion.  Thus, this defense fails as a matter of law.

As to the twelfth affirmative defense, relating to nominative fair use (which is a court created doctrine, not in 15 U.S.C. §1115(b)(4)), this claim is inapposite with respect to the conduct at issue in this motion.  "The [nominative fair use] test is appropriate where a defendant has used the plaintiff's mark to describe the plaintiff's product, even if the defendant's ultimate goal is to describe his own product." *Commodores Entm't Corp. v. McClary*, 314 F. Supp. 3d 1246, 1249 (M.D. Fla. 2018)(internal quotation omitted).  Air Pros has provided no evidence, and will not be able to provide any evidence, suggesting that its use of "$59 Air Around the Clock AC repair deal" or "Air Around the Clock as a search engine keyword, was in fact purposely referencing Plaintiff's services in order to describe Air Pros services.  From the face of the infringing materials, such a claim is preposterous.  Thus, there is simply no issue of fact that would save this defense from summary judgment.

**F.    Plaintiff Entitled to a Permanent Injunction**

A permanent injunction should be entered.  Under traditional equitable principles, a plaintiff seeking a permanent injunction must demonstrate (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction." *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc*., 522 F.3d 1200, 1208 (11th Cir. 2008) (*citing eBay Inc. v. MercExchange, L.L.C*., 547 U.S. 388, 391 (2006)).

The irreparable injury to Plaintiff's business can be found in the results of Air Pros infringement as it has created substantial consumer confusion in the relevant marketplace.  As noted by this Court, "[t]his type of harm is certainly hard to quantify and thus is irreparable." *Edge Sys.*, 186 F. Supp. 3d at 1362; *See, Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 741 (7th Cir.2013) ("[I]rreparable harm is especially likely in a trademark case because of the difficulty of quantifying the likely effect on a brand of a

nontrivial period of consumer confusion.").  Indeed, even without a presumption of irreparable harm, it remains 11th Circuit precedent that "a sufficiently strong showing of likelihood of confusion may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir.1998)(*citing E. Remy Martin & Co. v. Shaw–Ross Int'l Imports*, 756 F.2d 1525, 1530 (11th Cir.1985).   As such, there is sufficient irreparable harm to support an entry of a permanent injunction.

As to the inadequacy of legal remedies, this Court has recognized many times that there is no monetary amount that can by itself cure the damage to Plaintiff's goodwill and reputation. *Edge Sys.,* 186 F. Supp. 3d at 1363 (*citing Adidas AG v. 2013jeremyscottadidas.com*, No. 13–61867–CIV, 2014 WL 799132, at *8 (S.D.Fla. Feb. 28, 2014)).  Here, Plaintiff has spent over 30 years building its goodwill and reputation, and no amount of money can bring back any goodwill that is lost due to Air Pros' improper use of Plaintiff's mark.  Accordingly, the inadequacy of remedies at law to compensate for any loss of goodwill and Plaintiff's loss of control of its mark favors the entry of an injunction.

The balancing of harms favors injunctive relief as well.  Plaintiff has been using its mark for over 30 years and invested millions in building it up, while Defendant has no legitimate interest in using it to cause confusion.  Under these circumstances, it would be impossible for any harm to Air Pros to outweigh the harm being suffered by Plaintiff. *See e.g., Tiramisu Int'l LLC v. Clever Imports LLC*, 741 F.Supp.2d 1279, 1288 (S.D.Fla.2010)(reasoning that enjoining a defendant from using a protected mark "cannot cause a hardship for [Defendant] that could outweigh the harm suffered by [Plaintiff] through the illegal use of its mark").

Finally, because Air Pros' action are causing confusion, the public interest is served by an injunction. *See, e.g., Davidoff & CIE, S.A. v. PLD Intern. Corp*., 263 F.3d 1297, 1304 (11th Cir.2001)("[T]he public interest is served by preventing consumer confusion in the marketplace.").  As this summed up succinctly, "'[t]he public has an interest in not being misled as to the origin, source, or sponsorship of trademarked products.'" *Edge Sys.,* 186 F. Supp. 3d at 1363 (*quoting Chanel, Inc. v. chanel255.org*, No. 12–21762–CIV, 2012 WL 1941598, at *6 (S.D.Fla. May 29, 2012).  Here, there is no dispute that there is actual confusion occurring in the South Florida area and thus the public interest will be well served by an injunction

For these reasons, entry of a permanent injunction is warranted.

## IV.    <u>CONCLUSION</u>

**WHEREFORE,** for the reasons stated above, Plaintiff respectfully requests that summary judgment be entered against Air Pros and in favor of Plaintiff on the liability under Counts I, II, III, and IV of the Second Amended Complaint, that Air Pros be enjoined from further infringements, false designations of origin, and deceptive practices, and that the Court grant any additional relief that is deemed to be just and proper.


On this 18th day of September, 2020.

Respectfully submitted,

By: <u>/s/ James Keys III</u>
Elias R. Hilal, Esq. (FBN 60,337)
E-mail Address: elias.hilal@erhlaw.com
LAW OFFICE OF ELIAS R. HILAL, PA
633 SE 3rd Ave Ste 301
Fort Lauderdale, Florida 33301
Telephone: (954) 463-2065
Facsimile:  (954) 861-4746

-and-

James G. Keys, III, Esq. (FBN 63,943)
E-mail Address: mail@keyslawfirm.com
THE KEYS LAW FIRM, PLLC
3350 SW 148th Ave, Ste 110
Miramar, Florida 33027
Telephone: (954) 519-2041
Facsimile:  (954) 519-2042
*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on <u>September 18, 2020</u>, a true and correct copy of the foregoing

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT AIR PROS, LLC AND INCORPORATED MEMORANDUM OF LAW** was served on all counsel of record identified on the Service List via transmission of Notice of Electronic Filing generated by CM/ECF.

Plaintiff
**AROUND THE CLOCK A/C SERVICE, LLC**

By: <u>/s/ James Keys III</u>
Elias R. Hilal
James Keys, III

<u>SERVICE LIST</u>

Daniel J. Simon
danny@lslawpl.com

Logan M. P. Phillips
logan@lslawpl.com

LALCHANDANI SIMON PL
25 S.E. 2nd Avenue, Suite 1020
Miami, Florida 33131
(305) 999-5291 (office)
(305) 671-9282 (fax)

*Counsel for Defendants*